UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLEN TRENCH SAFETY CORP.,

    Plaintiff,

v.

OZARK LASER SYSTEMS, et al.,

    Defendants.
_____/

File No. 1:15-CV-255

Hon. ROBERT HOLMES BELL

## **O P I N I O N**

    This is a copyright action brought by Michigan-based Allen Trench Safety Corporation against Missouri-based Ozark Laser Systems, alleging that Ozark Laser copied Allen Trench's Assembly Videos onto its own website. Defendants Ozark Laser, et al., filed a motion to dismiss for lack of personal jurisdiction and failure to state a claim. (ECF No. 9, 10.) Plaintiff has filed a response (ECF No. 15), to which Defendants have replied (ECF No. 18). For the reasons set forth below, the Court grants Defendants' motion.

### I.

    Plaintiff Allen Trench, a corporation headquartered in Battle Creek, Michigan, is an authorized distributor of Ultra-Shore trench boxes. (Compl. ¶¶ 1, 9, ECF No. 1.) In 2011 and 2012, Plaintiff created and published on its website three how-to videos related to assembling and using the Ultra-Shore trench boxes. (*Id*., ¶¶ 9-10.) Plaintiff filed copyright registration applications for the three videos in February 2015. (*Id*., ¶ 12.)

Defendants include Ozark Laser Systems, Ozark Laser & Shoring, Ozark Laser Systems LLC (collectively, "Ozark Laser"), and Ozark Laser President Ryan Zweerink. The Ozark Laser corporations, incorporated under Missouri law, provide rental, sales, and service of surveying instruments and specialty underground utility equipment. (Zweerink Decl. ¶¶ 4-5, ECF No. 10-1.) Ozark Laser provides its goods and services regionally in Missouri, Arkansas, Oklahoma, and Kansas. (*Id.*, ¶¶ 6-7.) Ozark Laser is also an authorized distributor of Ultra-Shore products in the assigned distribution territory of Missouri, Arkansas, Oklahoma, and Kansas. (*Id.*, ¶ 8.)

Ozark Lasers operates two websites: ozarklaser.com is a homepage that does not accept sales orders or services, but provides a fillable form to contact Ozark Laser; http://topconstore.com is a sales website that has a shopping cart function so that users can order laser equipment. (*Id.*, ¶¶ 20, 41.) The Ultra-Shore products cannot be ordered online via Ozark Laser's websites. (*Id.*, ¶ 41.) Sometime in 2014, an employee of Ozark Laser posted three videos to the ozarklaser.com website, detailing the assembly and use of the Ultra-Shore trench boxes. (*Id.*, ¶¶ 20, 29.) In March 2015, Plaintiff Allen Trench contacted Ozark Laser demanding removal of the videos because they infringed on Plaintiff's copyrights. (Cease and Desist Demand Letter, ECF No. 10-1, Ex. F.) Defendants complied and removed the videos that same month. (Zweerink Decl. ¶ 31.) Plaintiff now sues for damages for copyright infringement.

## II.

When sitting in federal question jurisdiction, a court may exercise personal jurisdiction over a defendant "'if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process.'" *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Mich. Coal. of Radioactive Materials Users,*

*Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). Although Michigan's long-arm statute is "coextensive" with due process, the jurisdictional analysis requires inquiry into both factors because the statute "enumerates specific instances where jurisdiction may be exercised." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 n.1 (6th Cir. 2012) (citing *Green v. Wilson*, 565 N.W.2d 813, 816 (Mich. 1997)).

Where, as here, the Court decides a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of making a prima facie showing that the court has personal jurisdiction over the defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). To meet this burden, the plaintiff must establish "with reasonable particularity" sufficient contacts between the defendant and the forum state to support jurisdiction. *Id.*; *see also See, Inc. v. Imago Eyewear Pty., Ltd.*, 167 F. App'x 518, 520-21 (6th Cir. 2006) ("[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction."). In evaluating the plaintiff's response to the motion to dismiss, the Court construes the facts in the light most favorable to the plaintiff and disregards contradictory evidence proffered by the defendant. *Neogen*, 282 F.3d at 887.

A defendant may be subject to general personal jurisdiction and/or specific personal jurisdiction (also known as "limited" personal jurisdiction). "Limited jurisdiction extends only to claims arising from the defendant's activities that were either within Michigan or had an in-state effect," whereas "[g]eneral jurisdiction . . . enables a court in Michigan to exercise jurisdiction over a [defendant] regardless of whether the claim at issue is related to its activities in the state or has an

in-state effect." *Id.* at 888 (citing *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.,* 882 F.2d 1087, 1089 (6th Cir.1989)).

Michigan subjects individuals to general personal jurisdiction when the defendant is in the state at the time of service; the defendant is domiciled in the state; or when the defendant consents to jurisdiction. Mich. Comp. Laws § 600.701. Corporations are subject to general personal jurisdiction when the corporation is incorporated in the state; when the corporation consents; or when the corporation carries on "a continuous and systematic part of its general business within the state." Mich. Comp. Laws § 600.711. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (2011).

The exercise of specific personal jurisdiction requires a two-step process: "(1) first, the court must determine whether any of Michigan's relevant long-arm statutes authorize the exercise of jurisdiction over Defendants; and, if so, (2) the court must determine whether exercise of that jurisdiction comports with constitutional due process." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007). The reach of Michigan's long-arm statute has been construed as co-extensive with the limits of constitutional due process. *Mich. Coal. of Radioactive Material Users,* 954 F.2d at 1176; *Green,* 565 N.W.2d at 816-17.

Due process concerns are governed by the standard articulated in *International Shoe* and expounded by its progeny: the Court must ensure a defendant has "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend 'traditional notions of fair play

4

and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

In addition to the "minimum contacts" analysis required by *International Shoe*, the question of due process in the context of establishing specific personal jurisdiction turns on whether "the defendant's conduct and connection with the forum State are such that [the defendant] should reasonably anticipate being haled into court there." *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980). The Sixth Circuit has formulated a three-prong test to evaluate whether exercising specific personal jurisdiction satisfies due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

### III.

**A. General Personal Jurisdiction**

There is no basis for general personal jurisdiction over any of the Defendants. The only factual predicate for exercising jurisdiction over Defendant Zweerink in his personal capacity is a single phone call he made to Allen Trench to request a price quote. That contact does not suffice under Michigan law for general personal jurisdiction over individuals.

As to the corporate Defendants, Plaintiff argues that Defendants' sale of laser equipment to Michigan customers via its topconstore.com website, and Defendants' business relationship with a Lansing, Michigan, company, demonstrate continuous and systematic general business in Michigan.

5

Defendants' sales are not demonstrative of continuous or systematic business, however. Defendants have sold approximately twenty items of laser equipment over a period of seven years in Michigan; the annual sales of laser equipment constitutes less than 2% of Defendants' annual gross sales. The website used for these sales is not even the website containing the infringing videos. Defendants' sales are not more than "single and occasional acts;" Defendants are not "at home" in Michigan. *See Goodyear*, 131 S. Ct. at 2851 (quoting *Int'l Shoe*, 326 U.S. at 318). Furthermore, posting infringing videos on the website cannot confer jurisdiction. *See CollegeSource, Inc. v. AcademyOne, Inc.,* 653 F.3d 1066, 1074-75 (9th Cir. 2011) (misappropriation of intellectual property does not support general jurisdiction because the misappropriation is not continuous and systematic, but a few discrete acts in a short period of time). Defendants' purchase of goods from a Lansing, Michigan, company likewise cannot support general personal jurisdiction. "[M]ere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984).

**B. Specific Personal Jurisdiction**

Plaintiff has failed to show that specific personal jurisdiction over Defendants comports with due process under the *Southern Machine* three-prong test. Although Plaintiff provides an articulate summary of the law, it provides weak application of the law to its facts other than to say that Defendants own an interactive website and Zweerink once requested a quote from Plaintiff.

**1. Purposeful Availment Prong**

The Sixth Circuit "views the purposeful availment prong of the *Southern Machine* test as 'essential' to a finding of personal jurisdiction." *Intera Corp. v. Henderson,* 428 F.3d 605, 616 (6th

Cir. 2005) (citing *Calphalon Corp.* 228 F.3d at 722). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts," *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984)), "or of the 'unilateral activity of another party or a third person,'" *Burger King*, 471 U.S. at 475 (quoting *Helicopteros Nacionales*, 466 U.S. at 417). *See also Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003).

### a. *Zippo* Sliding Scale Analysis

Application of the *Zippo* "sliding scale" of website interactivity does not support personal jurisdiction over Defendants because of their website. Under the *Zippo* sliding scale, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa.1997). A passive, merely informational website is at one end of the sliding scale, whereas an interactive, transactional website is at the opposite end. *Id.* "A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen*, 282 F.3d at 890 (adopting *Zippo*).

The ozarklasers.com website is not "interactive to a degree that reveals specifically intended interaction with residents of the state." *Id.* Plaintiff has shown nothing more than that Defendants maintain a website through which Michigan residents, hypothetically, could contact them.[1] Plaintiff

---

[1] It appears that Ozark Lasers also operates store.ozarklaser.com, a fully interactive website on ozark laser.com where users can purchase laser equipment through a fully interactive shopping cart function. The Court does not consider this website in its jurisdictional analysis, however, because neither party has addressed its existence.

does not show that Michigan residents have accessed the website or attempted to use the interactive contact form. Moreover, where courts have exercised personal jurisdiction on the basis of an interactive commercial website, they have specifically noted the existence of additional contacts with the forum state to demonstrate that the defendant directed its activity towards the forum state. *See*, *e.g.*, *Sony/ATV Music Publ'g LLC v. CA VS USA, Inc.*, No. 3:08-0265, 2009 WL 2177110, at *5 (M.D. Tenn. July 21, 2009) (concluding that the maintenance of a website, coupled with the defendant's contracts with a Tennessee resident and its marketing through distributors who sell to Tennessee residents showed a purposeful availment of the laws and protections of the forum); *Word Music v. Priddis Music*, No. 3:07-0502, 2007 WL 3231835, at *7 (M.D. Tenn. Oct. 30, 2007) (finding purposeful availment based on the interactivity and accessibility of the website, and the fact that at least one forum state resident purchased and received the product from the website and was then further solicited by the defendant to order more product). Plaintiff has not alleged other contacts between Defendants and Michigan to show that Defendants directed their website and business transactions to Michigan.

### b. *Calder* Effects Test Analysis

Application of the traditional *Calder* effects test does not impact the purposeful availment analysis. The *Calder* effects test allows a plaintiff to "enhance" the contacts a defendant has with a forum by demonstrating that the defendant intentionally directed its tortious conduct toward plaintiffs in the forum. *Mor-Dall Enter., Inc. v. Dark Horse Distillery, LLC*, 16 F. Supp. 3d 874, 881 (W.D. Mich. 2014) (Bell, J.) (citing *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 451 (6th Cir.2012); *Air Prods. & Controls, Inc.*, 503 F.3d at 552–53; *Calder v. Jones*, 465 U.S. 783, 788–89 (1984)). Contacts with the forum are "enhanced" when (1) the defendants acted intentionally, (2) the

defendants' action was expressly aimed at the State of Michigan, and (3) the brunt of the injuries were felt in Michigan. *Id.* (citing *Thomas v. Barrett*, No. 1:12–CV–74, 2012 WL 2952188, at *2 (W.D.Mich. July 19, 2012) (Bell, J.)). *See also Audi AG & Volkswagon of Am., Inc. v. D'Amato*, 341 F.Supp.2d 734, 746 (E.D.Mich. 2004).

Defendants acted intentionally in posting the videos, whether or not they intended to infringe on Plaintiff's copyright. However, Plaintiff has not adduced evidence that the actions were aimed at the State of Michigan. Other courts have required something more than merely running a website, such as conduct targeting Plaintiff's business in the forum. *See, e.g. Woods Int'l Inc. v. McRoy*, 436 F. Supp.2d 744, 750 (M.D. N.C. 2006) (defendant's passive, non-interactive website that did not accept orders did not indicate intent to target North Carolina when considering the entire website; single sale of defendant's product to North Carolina resident via a wholesaler did not support jurisdiction because the copyright claim did not arise from that sale); *Facebook, Inc. v. Pedersen*, 868 F. Supp. 2d 953, 959 (N.D. Cal. 2012) (plaintiff failed to show defendant's website users in California were an "integral component" of website's "business model and profitability"). *See also Metal Indus. Co. v. Sup. Ct. of Cal.*, 480 U.S. 102 (1987) (merely placing a product in the stream of commerce, without more, is not purposeful availment). Plaintiffs have not alleged that the copywritten videos induced Michigan customers to purchase Ultra-Shore products from Defendants, nor has Plaintiff alleged that Defendants provided Ultra-Shore goods in Michigan. *See e.g., Lanier v. Am. Bd. Of Endodontics*, 843 F.2d 901, 903-04, 911 (6th Cir. 1988) (exercising jurisdiction over Illinois professional organization who sent letters and accepted application from Michigan dentist, where "the real object of the [defendant's] contacts with Michigan is to have ongoing, far-reaching

consequences in the Michigan dental services market. These consequences are continuous and substantial, affording jurisdiction.")

Furthermore, Defendants have alleged that they only provide goods and services in the Ozark region, and that their Ultra-Shore distribution agreement is territorially limited to Missouri, Arkansas, Oklahoma, and Kansas. Other cases depended on the existence of a nationwide distribution agreement in order to find a defendant's contacts were "enhanced" by its website. *See, e.g., Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, (6th Cir. 2003) (adopting Justice O'Connor's stream of commerce "plus" approach articulated in *Asahi* to find a nationwide distribution agreement indicated purposeful availment)*; Tobin v. Astra Pharm. Prod., Inc.*, 993 F.2d 528, 544 (6th Cir. 1993); *Mor-Dall Enter.,* 16 F. Supp. 3d at 881; *IDFA, LLC v. Wilson*, 2009 WL 4646283, *12 (E.D. Mich. Dec. 8, 2009) (quoting *Calphalon,* 228 F.3d at 723) (sale of author's books on Barnes & Noble website was "the type of random, fortuitous, and attenuated contacts that the purposeful availment requirement is meant to prevent from causing jurisdiction.").

**2. Arising From**

The second *Southern Machine* factor is whether the cause of action arises from the defendant's activities in the forum state. *S. Mach. Co.*, 401 F.2d at 381. "Even if a defendant purposefully avails himself to the benefits of doing business in a forum, the exercise of specific jurisdiction only complies with due process if 'the cause of action . . . ha[s] a substantial connection with the defendant's in-state activities. " *Cmty. Trust Bancorp, Inc. v. Cmty. Trust Fin. Corp.*, 692 F.3d 469, 472 (6th Cir. 2012) (quoting *Bird,* 289 F.3d at 875) (internal quotation marks omitted)). "The defendant's contacts with the forum state must relate to the operative facts and nature of the controversy." *Id.* (citations omitted).

Plaintiff fails show that there is a substantial connection between Defendant Zweerink's request for a quote for products from Allen Trench and the underlying copyright infringement claim. Defendants' transactions with third parties in Michigan cannot support the "arising from" prong, either. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997) ("We cannot simply aggregate all of a defendant's contacts with a state—no matter how dissimilar in terms of geography, time, or substance—as evidence of the constitutionally-required minimum contacts." ). *See also Helicopteros Nacionales*, 466 U.S. at 417 (purchasing products from forum state did not support jurisdiction).

### 3. Reasonable Exercise

The final *Southern Machine* factor is whether, based on the quality and quantity of contacts, exercise of personal jurisdiction over the defendant is reasonable. *S. Mach. Co.*, 401 F.2d at 381. "An inference arises that the third factor is satisfied if the first two requirements are met." *Bird*, 289 F.3d at 875 (citing *CompuServe Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996)).

Here, Plaintiff is not entitled to an inference of reasonableness because it has not demonstrated that the first two factors are satisfied. The Court finds that exercise of personal jurisdiction over Defendants is unreasonable where Plaintiff has not demonstrated that Defendants have purposefully availed themselves of the privilege in acting in Michigan, nor that the cause of action arises from Defendants' actions in Michigan. Thus, the Court cannot exercise personal jurisdiction over Defendants.

### IV.

Even if the Court had personal jurisdiction over Defendants, the complaint would be subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). In reviewing a Rule 12(b)(6) motion

to dismiss, the Court must "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff,'" but "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). Under the federal notice pleading standards, a complaint must contain "a short and plain statement of the claim showing how the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this statement is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that "state a claim to relief that is plausible on its face," and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

Defendants move to dismiss the complaint for statutory damages and attorney's fees as barred under 17 U.S.C. § 412. Plaintiffs argue that the dismissal is premature.

Defendants are correct. Exceptions notwithstanding, 17 U.S.C. § 411(a) requires registration of the copyright claim prior to initiating an action for infringement. Plaintiff complied with that requirement by registering its copyright claims in February 2015. However, 17 U.S.C. § 412 provides that "no award of statutory damages or of attorney's fees . . . shall be made for . . . any infringement of the copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the

work." Plaintiff created the videos in 2011 and 2012; Defendants allegedly copied the videos in 2014; Plaintiff registered the copyright claim for the videos in 2015. Thus, Plaintiff is not eligible for statutory damages or attorney's fees.

## V.

Defendants moved to dismiss the case, or, in the alternative, to transfer venue to the Western District of Missouri pursuant to 28 U.S.C. § 1404(a). Plaintiff states, "Personal jurisdiction over the Defendants by this Court is proper, and this Court is, therefore, a proper venue." (Pl.'s Br. at 19.) Eliding its jurisdictional analysis into its venue analysis, Plaintiff has not requested to transfer venue if this Court finds it has no personal jurisdiction over Defendants. Thus, at the behest of both parties, the Court declines to transfer the case.

## VI.

For the reasons stated above, the Court lacks personal jurisdiction over Defendants. Moreover, Plaintiffs have failed to state a claim for statutory damages or attorney's fees under 17 U.S.C. § 412. Thus, the case shall be dismissed.

An order in accordance with this opinion shall follow.


Dated: July 21, 2015                         /s/ Robert Holmes Bell
                                             ROBERT HOLMES BELL
                                             UNITED STATES DISTRICT JUDGE